IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MELANIE A. RAY,                   :

    Plaintiff,                :

vs.                               :
                                     CIVIL ACTION 08-0115-M

MICHAEL J. ASTRUE,                :
Commissioner of
Social Security,                  :

    Defendant.                :


MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636© and Fed.R.Civ.P. 73 (*see* Doc. 17). Oral argument was waived in this action (Doc. 16). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Ser-

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative decision, Plaintiff was twenty-six years old, had completed a high school education, and had previous work experience as a medical assistant, cashier, and hostess (Doc. 11 Fact Sheet).  In claiming benefits, Plaintiff alleges disability due to a post-2004 stroke with minimal-to-mild residuals of the upper right extremities, diabetes mellitus, and possible internal carotid artery occlusion (Doc. 11 Fact Sheet).

The Plaintiff filed applications for disability benefits and SSI on May 26, 2004 (Tr. 88-90, 655-57).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she could not return to her past relevant work, Ray was capable of performing jobs which were classified as sedentary and semi-skilled (Tr. 21-48).  Plaintiff requested review of the hearing decision (Tr. 17-18) by the Appeals Council, but it was denied (Tr. 7-9).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Ray alleges the single claim that the ALJ did not accord appropriate consideration to the opinions and conclusions of her treating physicians (Doc. 11).  Defendant has responded to—and denies—these claims (Doc. 12).

Plaintiff claims that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's physicians.  Ray specifically refers to Doctors LaCour and Kemmerly (Doc. 11).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[1] *see also* 20 C.F.R. § 404.1527 (2008).  The relevant medical evidence of record follows.[2]

Plaintiff was admitted to Mobile Infirmary on February 24, 2004, by Dr. Anita Kemmerly, an endocrinologist, for six nights of treatment for stenosis of the left supraclinoid internal carotid artery (having previously suffered–and recovered from—a

---

[1] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[2] As this is such a large file, the Court will only discuss the medical evidence relative to the claim raised in this action.

mild left MCA infarct) (Tr. 185-210, 330).  Dr. Fritz LaCour, Jr., a neurologist, also treated Plaintiff during this hospitalization (Tr. 185, 329).  The records indicate that Ray had been non-compliant with taking certain of her medications and with dietary restrictions which had led to increased difficulties in regulating her glucose levels; she was placed on an insulin pump.  On admission, Plaintiff was experiencing speech disturbance, mild right central facial weakness, and right arm and leg hemiparesis; at discharge, Ray was transferred to Rotary Rehabilitation Hospital in improved condition, but with only a fair prognosis.

Plaintiff spent eighteen days at Rotary where she experienced "dramatic improvement in her right leg weakness" though she had no movement in her right arm (Tr. 212; *see generally* Tr. 211-26).  It was noted that she spoke "in coherent phrases with normal intonations of speech and occasional paraphasic errors" (Tr. 211).  Dr. LaCour, her doctor while at Rotary, characterized her hospitalization there as "uneventful" (Tr. 213).  Following her discharge from Rotary, Ray received a month of speech language therapy (Tr. 227-31), three months of physical therapy (Tr. 232-55), and five months of occupational therapy (Tr. 260-72), all of which were beneficial to her in that she showed improvement through the sessions.

Medical records from Dr. LaCour, spanning April 22 through

December 16, 2004, indicate that his diagnosis remained unchanged from Ray's discharge from Rotary (Tr. 291-94).  On the first of those four visits, Plaintiff's grip strength was 1/5 in the right hand and she was able to raise her right arm to vertical; she had only a "trivial" limp on the right and her speech was, generally, excellent (Tr. 294).  On June 17, Ray had 4/5 power in the right upper extremity, while the lower right extremity was normal; she had increased reflexes in the right arm and her gait was normal (Tr. 293).  On September 21, Plaintiff could "raise her right arm to 45 degrees.  Her grip [was] 3/5 on the right.  She ha[d] marked decrease in fine movements of the fingers on her right hand.  Her gait only show[ed] minimal right spastic features with slight slow advancement on the right" (Tr. 292).  On December 16, 2004, Ray had increased reflexes on the right; her grip was 1/5 on the right (Tr. 291).  "She [could] raise her right arm to just below the horizontal.  She ha[d] about a 25 to 50% fixed right shoulder" (*id.*).

Records from Dr. Kemmerly, following Ray's hospitalization, reveal that her condition improved and that she lost some weight (*see generally* Tr. 295-322).  More specifically, on June 4, 2004, the doctor noted that her speech was better and that the use of her right arm was better (Tr. 302).  On September 20, 2004, Kemmerly noted that Ray was "overall doing pretty good" (Tr. 298).  The Court notes that these records, for the most part,

demonstrate a focus on Plaintiff's diabetes.

On February 18, 2005, Dr. Kemmerly completed a Clinical Assessment of Symptoms Form in which she indicated that Ray had weakness in her right arm and slurred speech, though it was improved; the prognosis was fair (Tr. 323-25). The doctor noted that Plaintiff was unstable in her walking, had poor coordination, loss of manual dexterity, slight paralysis, difficulty solving problems, and speech/communication difficulties; Ray would be incapable of using her hands for simple grasping, pushing and pulling of arm controls, and fine manipulation and could use only her left foot for repetitive movements. Kemmerly indicated that Plaintiff's symptoms would distract her from adequately performing her daily activities or work and that physical activity would increase her symptoms to the point of making her unable to engage in work on a regular basis during an eight-hour day. It was the doctor's opinion that Ray needed to lie down and rest often during the day and that her impairments would cause her to miss work more than three days a month; Ray's condition had lasted for more than twelve months.

On March 31, Dr. LaCour noted that Plaintiff reported that she was doing very well and was making great strides (Tr. 336-37). The doctor noted that Ray could raise her arms to 95% vertical, had "increased flexion tone in the right upper extremity and particularly in the wrists and fingers;"

additionally, she could "fully extend her fingers and wrists passively and about 50% of normal actively" which LaCour characterized as "marked improvement" (Tr. 336).  He further noted that Plaintiff could "almost write a whole page now at one sitting" and that she had normal spontaneous gait and posture as well as normal demeanor and language (*id.*).  In a "Dear Sir" letter, written three weeks later, the doctor stated the following:  "She has diabetes and hypertension and her illness is well-controlled.  She is safe to work.  She has some difficulty writing and performing tasks with her right hand because of the stroke" (Tr. 335).

   Between February 28 and May 24, 2005, Ray was seen by Dr. Kemmerly, on four occasions, for a viral infection and glucose monitoring (Tr. 387-409).  The doctor also noted that her sugar levels had been affected, somewhat, because she was in the early stages of pregnancy.

   On September 13, 2005, a consultative neurological exam was performed by Dr. Todd D. Elmore, who found Ray to be alert with soft, passive, clear speech and without significant cognitive deficits; the doctor noted normal attention span and concentration (Tr. 383-86).  Elmore found that Ray had "mild right hemiparesis with strength of approximately 4/5 in her upper and lower extremity on the right" as well as decreased dexterity on the right and slight increased tone on the right (Tr. 384).

Reflexes were 1/4 on the left and 3/4 on the right; gait was a little slow and she had mild circumduction of her right leg.  She could not perform the Rhomberg maneuver very well and could not tandem walk.  Dr. Elmore noted that her deficits were most likely to be permanent.  The doctor completed a physical capacities evaluation in which he indicated that Plaintiff could sit six hours, stand five hours, and walk four hours at a time while being able to sit eight hours, stand seven hours, and walk five hours during an eight-hour day; he further indicated that she could lift and carry up to ten pounds continuously, twenty pounds frequently, and twenty-five pounds on an occasional basis (Tr. 386).  Dr. Elmore found Ray incapable of using her right hand for simple grasping, pushing and pulling of arm controls or fine manipulation and indicated an inability to use her right foot for repetitive movement.  He further found that Plaintiff could bend, squat, and reach on an occasional basis but was never able to crawl or climb; the doctor thought that Ray was mildly restricted in working at unprotected heights, being around moving machinery, and driving automotive equipment.

On September 15, 2005, Dr. LaCour stated that Plaintiff reported that she was in her seventh month of pregnancy, but everything was fine, though she was "a little blue and depressed" (Tr. 411).  The doctor noted that she had 3/5 grip power on the right and walked "very well" (*id.*).  On December 1, LaCour noted

that Ray was alert and had normal comprehension; her speech was slightly slow but not dysarthric (Tr. 412).  Plaintiff had "3+/5 power of the right arm generally but marked decrease in rapid movements of the right hand" (*id.*).  The doctor next saw Ray on May 2, 2006 and stated that she had "mild spasticity of the right arm and decreased rapid movements with mild dystonic posturing with activation.  She has had an amazing recovery" (Tr. 548).  The doctor indicated that he did not need to see her for six more months (Tr. 549).

Records from the U.S.A. Department of Neurology indicate that Ray was seen by Dr. M. Asim Mahmood twice (Tr. 609-11).  On October 31, 2005, the doctor noted that Plaintiff had 4+/5 strength in her right arm with reduced grip strength.  On July 31, 2006, Dr. Mahmood noted that she was unchanged neurologically (Tr. 609).

On July 3, 2006, Dr. Kemmerly saw Plaintiff and noted that she had last seen her about a year earlier; Ray now had a six-month old baby (Tr. 565-75).  The doctor adjusted her insulin and told her to come back in two months.

On August 8, 2008, Dr. Ilyas A. Shaikh performed a consultative neurological examination in which he noted that Ray had no spine tenderness and normal range of motion; she could move all four of her extremities (Tr. 578-84).  Plaintiff's motor strength was 4/5 in her right arm and 5/5 in the left arm and

lower extremities.  The doctor noted "a component of poor effort at her right upper extremity" though she had "mild downward drift" in that arm; it was also relatively colder though there was no rigidity or spasticity (Tr. 579).  Her fine motor skills were normal.  Ray's "grip strength [was] 5/5 on [the] left and 3+/5 on [the] right, probably with a component of poor effort" (*id.*).  Dr. Shaikh noted mildly compromised coordination in the right arm as well as "a limp and mild circumduction with her right leg;" Plaintiff was unable to squat (Tr. 580).  The doctor noted that he had access to—and reviewed—Ray's medical records in reaching his conclusions.  Dr. Shaikh completed a questionnaire which indicated that Plaintiff could stand for one hour and walk for one-half hour at a time while able to stand for three hours and walk for two hours during an eight-hour day; there was no limit on Ray's ability to sit.  He further stated that Plaintiff could lift and carry up to five pounds constantly, ten pounds frequently, and thirty pounds on an occasional basis.  Dr. Shaikh also found that, when it came to pushing and pulling, Ray could use her right arm only occasionally and right leg frequently, while there was no limit on the left; he limited her to stooping, kneeling, crouching, and crawling on an occasional basis while limiting her ability to handle objects and reach overhead to only frequently.

    Dr. Kemmerly examined Plaintiff on August 9, 2006 and

adjusted her medications (Tr. 586-88).  Two months later, the doctor adjusted her insulin again (Tr. 596-98).

On October 26, 2006, Plaintiff told Dr. LaCour that she was doing well and that although she had a moderately frozen right shoulder, it did not hurt her (Tr. 590-91).  The doctor noted "a 50% frozen shoulder on the right;" he adjusted her medications and prescribed Lortab[3] (Tr. 590).  On December 7, LaCour wrote a letter to Plaintiff's attorney in which he stated that although Ray was getting better, "she continues with significant disability in her right arm, and a severe, even life-threatening degree of stenosis in her internal carotid artery intracranially.  This is like a 'Guillotine' hanging over her head on a daily basis" (Tr. 593; *see generally* Tr. 593-94).  He further stated:

> Because of her disability, her ongoing internal carotid severe stenosis and high risk for stroke, as well as her type-1 diabetes, she is a set-up for severe consequences of her multiple illnesses.  It is impossible for me to see how she can compete in the workplace for gainful employment with this amount of medical burden.
> She has suffered psychological trauma as well as organic and physical trauma from her illnesses which handicap her significantly in her ability to compete.

(Tr. 593).

---

[3]*Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain."  *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

On January 5, 2007, Dr. Kemmerly completed a Clinical Assessment of Symptoms Form in which she indicated that Ray suffered from Diabetes Mellitus 1, a stroke, anemia, and thyroiditis; her prognosis was poor (Tr. 602-04).  The doctor indicated that Plaintiff was unstable in her walking, had poor coordination, loss of manual dexterity, slight paralysis, slowed thinking, and speech/communication difficulties; Ray would be incapable of using her hands for simple grasping, pushing and pulling of arm controls, and fine manipulation.  Kemmerly noted that Plaintiff was weak on her right side and had difficulty walking.  The doctor indicated that Plaintiff's symptoms would distract her from adequately performing her daily activities or work and that physical activity would increase her symptoms to the point of making her unable to engage in work on a regular basis during an eight-hour day; Ray's medications would cause side effects which would cause some limitations but would not create serious problems.  It was the doctor's opinion that Plaintiff needed to lie down and rest during the day on a daily basis; she further stated that Ray was unable to work as she was permanently disabled.

The ALJ, in reaching his decision, assigned "significant evidentiary weight . . . to the reports and examinations of the consultative examining neurologists, Dr. Todd Elmore and Dr. Ilyas Shaikh" (Tr. 38).  The ALJ noted that the conclusions of

12

each report were internally consistent with the findings therein and that the reports were relatively consistent with one another. The ALJ also noted that the conclusions of Drs. Elmore and Shaikh were supported by the findings of Dr. Mahmood (Tr. 39).

In reaching this decision, the ALJ assigned no weight to the conclusions of Drs. LaCour and Kemmerly (Tr. 39-40).  The ALJ rejected Dr. LaCour's opinions because the doctor "never placed any specific physical functional restrictions or limitations on the claimant's activities" and his opinions were not supported by his own examination findings (Tr. 39).  Dr. Kemmerly's opinions were rejected by the ALJ for the following reasons:  (1) her specialty as an endocrinologist had focused—and limited—her attention to the treatment of Ray's diabetes, a condition which has been fairly-well controlled with medication, and had not addressed Plaintiff's neurological impairments which have been a bigger concern (relative to her ability to work); (2) the doctor's opinions, especially with regard to the severity of Ray's impairments, were not supported by findings in her treatment notes or in the medical records of other physicians (Tr. 40).

The Court has reviewed the evidence of record and finds that the ALJ's conclusions are supported by substantial evidence. Though Drs. LaCour and Kemmerly have both been treating Plaintiff for a number of years, their conclusions regarding the severity

of Ray's impairments and her limitations cannot be found in their treatment notes.  Ray's claim otherwise is without merit.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 8th day of October, 2008.

s/BERT W. MILLING, JR.  
UNITED STATES MAGISTRATE JUDGE